UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MOHAMED MUSE, | |
| Plaintiff, | No. 3:15-cv-00615 |
| v. | Chief Judge Crenshaw |
| | Magistrate Judge Newbern |
| DAVID HARPER, et al., | |
| Defendants. | |

To the Honorable Waverly D. Crenshaw, Jr.:

## REPORT AND RECOMMENDATION

Pending before the Court is the Motion to Dismiss of Defendant Officers Heimbach, Harper, Mendenhall, and Holland (Doc. No. 35) to which Plaintiff Mohamed Muse has not responded.[1] For the reasons stated below, the Magistrate Judge RECOMMENDS that the Motion to Dismiss be GRANTED.

**I.  Background**

On June 1, 2015, Muse, appearing *pro se* and using a court-provided form complaint, brought this action against Metro Nashville Police Officers Heimbach, Harper, Mendenhall, and Holland (Defendants). (Doc. No. 1.) Muse also applied for leave to proceed *in forma pauperis*. (Doc. No. 2.) After ascertaining Muse's source of income, determining that no criminal charges

---

[1]  Muse has filed several change of address notices with the Court, most recently on January 12, 2017. (Doc. No. 41.) Defendants notified the Court that they re-served Muse at his new address with their Motion to Dismiss and Memorandum in Support, as well as the Court's December 29, 2016 order on January 17, 2017. (Doc. No. 42.) Because Defendants so state, and because it is Muse's duty to stay informed about the progress of this action, the undersigned will assume that he has received all relevant filings and orders.

had been brought arising out of the incident in question, and finding that Muse's Complaint was not facially frivolous, the Court directed the Clerk to issue process to Defendants. (Doc. Nos. 3, 8, 9, 11, 13, 17.) Defendants then jointly filed this motion to dismiss. (Doc. No. 35.)

Muse makes the following allegations in his Complaint, which the Court assumes to be true for purposes of Defendants' motion to dismiss:

On June 29, 2014, at approximately 11:00 p.m., Officer Heimbach executed a traffic stop on Muse after Muse purchased gas from the Z Mart convenience store on Lafayette Street in Nashville. (Doc. No. 1, PageID# 2.) Muse had been working as a taxi driver at the nearby Greyhound Bus Station. (*Id.*) Eventually, ten more officers came to the traffic stop. (*Id.*) Officer Harper "start[ed] undressing" Muse, who was wearing a suit and tie, and proceeded to "take[] pictures of[] every business card" in Muse's wallet and photograph pictures of Muse's children. (*Id.*) Harper then called "Catlen Butcher"[2] and told her Muse "was selling drugs" and that "he found drugs in [Muse's] car," which was not true. (*Id.*) Muse further alleges that someone "used tools to take [Muse's] car apart and damaged [his] trunk." (*Id.*)

Muse asks the Court to "tell [Defendants] they broke laws and lied on [him] just to lock [him] up" and to hold them accountable for their actions. (*Id.*) He also asks for $250,000.00 to compensate him for pain and suffering and "all they put [him through.]" (*Id.* at PageID# 3.)

On August 3, 2016, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 35.) On December 29, 2016, the undersigned entered an order noting Muse's failure to respond to the Motion to Dismiss but extending his time to do so until February 3, 2017, in light of the fact that no scheduling order addressing dispositive motion filing

---

[2] Defendants state that Caitlyn Butcher was Muse's parole officer at the time of the traffic stop. (Doc. No. 35-2, PageID# 95.)

deadlines had been entered. (Doc. No. 39.) That order advised Muse that the Court would consider his failure to respond by February 3, 2017, to indicate that he did not oppose Defendants' motion. (*Id*. (citing Local Rule 7.01(b)).) As of the date of this Report, Muse has not responded to Defendants' motion. Further, more than six months have passed without any filing having been made by Muse. The case may therefore be dismissed as inactive under this Court's Local Rule 41.01.

## II.     Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Finally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When presented with a motion to dismiss under Rule 12(b)(6), a court

may consider, in addition to the complaint's allegations, "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

## III. Analysis

Muse did not state any grounds for filing his complaint in federal court, nor did he identify any particular federal cause of action. (Doc. No. 1, PageID# 1–3.) Defendants assume that Muse brings his claims under 42 U.S.C. § 1983 and Tennessee law, and the undersigned does as well.

Under § 1983, a plaintiff may bring "a cause of action against any person who, under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution and federal law." 42 U.S.C. § 1983; *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996). Defendants argue that Muse's claims must be dismissed for five reasons: (1) Muse failed to identify whether he is suing the officers in their individual or official capacities; (2) Muse failed to allege what Mendenhall and Holland did to violate his constitutional rights; (3) Muse failed to identify a Metro custom or policy in support of his official capacity claim; (4) the officers are entitled to qualified immunity; and (5) Muse's state-law defamation claim fails as a matter of law. (Doc. No. 36.)

### A. Dismissal of Claims Against Defendants Mendenhall and Holland

Muse fails to state a claim against Mendenhall and Holland because, although he names them as defendants, he does not mention them in the body of the complaint. He therefore alleges no facts to state a claim for relief against them. *See Iqbal*, 556 U.S. at 677–78; *Adams v. Tenn. Dep't of Corr.*, No. 3:12-cv-787, 2012 WL 3402174, at *3 (M.D. Tenn. Aug. 14, 2012) ("It is well settled that a civil rights plaintiff must allege the personal involvement of a defendant to state a

claim against him under 42 U.S.C. § 1983."). All claims against Defendants Mendenhall and Holland should be dismissed for this reason.

### B. Dismissal of Claims against Defendants Harper and Heimbach

Muse does not state whether he brings his claims against Defendants Harper and Heimbach in their individual or official capacities. (Doc. No. 1.) A plaintiff is required, however, to properly allege the capacity in which he sues each defendant. *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989). If the plaintiff does not, official capacity is assumed. *Id.* However, the Sixth Circuit has applied a "course of proceedings" test to determine based upon the action as a whole whether the plaintiff intended to sue defendants in their individual capacities and whether defendants have notice of that intent despite the plaintiff's failure to state it explicitly. *Shepherd v. Wellman*, 313 F.3d 963, 967–88 (6th Cir. 2002). Because Muse is appearing *pro se*, and because the form he used to make his complaint does not ask in what capacity he sued Defendants, the undersigned considers potential claims against Defendants in both capacities under the course-of-proceedings analysis.

#### i. Official Capacity Claims

"An official-capacity claim against a person is essentially a claim against the municipality." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). To establish municipal liability, an "entity's policy or custom must have played a part in the violation of federal law." *Id.* (citation and internal quotation marks omitted). Muse's Complaint contains no allegations regarding any municipal policy or custom, nor does he allege that Metro Nashville played any other role in causing the alleged violation of his rights. Muse's claims against Harper and Heimbach in their official capacities therefore must be dismissed.

### ii. Individual Capacity Claims

When a plaintiff does not set forth explicitly in the pleadings that he is suing a state defendant in his individual capacity for damages, the Sixth Circuit "uses a 'course of proceedings' test to determine whether the § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable." *Shepherd*, 313 F.3d at 967–68 (citing *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc)). Under this test, the court considers "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Id.* at 969.

A request for monetary damages in a complaint, standing alone, is not sufficient to put a defendant on notice of his personal liability. *Id.* In *Shepherd*, for example, the complaint referred to the defendant by his official title and made allegations that referenced his responsibility for training and supervision, never specifying in what capacity plaintiffs were suing him. *Id.* at 968–69. The complaint, "[i]f anything, . . . suggest[ed] that [the defendant] was being sued in his official capacity." *Id.* at 968. The plaintiffs' request for monetary damages was "the only indication" of an individual-capacity suit, and this was insufficient because the rest of the complaint "so strongly suggest[ed] an official capacity suit." *Id.* at 969.

In *Moore v. City of Harriman*, however, the complaint, taken as a whole, provided adequate notice to the defendants. 272 F.3d at 773. The caption listed the officers' names, not their official titles, and the complaint consistently referred to the officers as the "individual defendants." *Id.* One paragraph of the complaint stated: "The said officers, acting *for themselves and* for the City," acted "with malice . . . and violated the plaintiff's civil rights." *Id.* Finally, the plaintiff requested compensatory and punitive damages against "each of the defendants." *Id.* Based on this language,

the Sixth Circuit found that the complaint standing alone "likely provided sufficient" notice to the officers that they were being sued individually. *Id.*

Muse's Complaint is more analogous to the complaint in *Shepherd* than in *Moore* and therefore failed to give Defendants sufficient notice of potential individual liability. The caption of the Complaint lists the officers' names with their titles, and the Complaint's allegations likewise refer to Heimbach and Harper by title. (Doc. No. 1, PageID# 1–2.) Muse also requests monetary damages, but does not state from whom he seeks an award. (*Id.* at 3 ("I would like . . . $250,000 for all they put me thro[ugh].").) As in *Shepherd*, the only indication that Muse intended to sue Defendants in their individual capacities is his request for damages.

Defendants invoke qualified immunity in their Motion to Dismiss, which can indicate a defendant's notice that he has been sued individually. However, Defendants in this case do so only "[a]ssuming for the sake of argument that the plaintiff sufficiently pled individual liability claims." (Doc. No. 36, PageID# 103.) In any case, this Court has held that, even when defendants raise qualified immunity in a motion to dismiss and the plaintiff clarifies in his response that he intended to sue defendants in their individual capacities (which Muse has not done here), a complaint can still be ambiguous as to the capacity of the suit. *See Sykes v. Sumner Cty. Jail*, No. 3:12-cv-00017, 2012 WL 3231339, at *4 (M.D. Tenn. Aug. 6, 2012) (citing *Williams v. Tenn. Dep't of Corr.*, No. 3:05-0786, 2006 WL 273588, at *2 (M.D. Tenn. Feb. 2, 2006)), *adopted by Sykes v. Sumner Cty. Jail*, No. 3:12-cv-00017, 2012 WL 5338663 (M.D. Tenn. Oct. 30, 2012).

In some instances, this Court has allowed plaintiffs with such ambiguous filings the opportunity to amend their complaints to make clear the capacity in which they sue individual defendants when, as here, the case remains in the early stages of litigation. *See e.g., Sykes*, 2012 WL 5338663, at *1; *White v. Dr.*, No. 3-11-00353, 2011 WL 5027543, at *3 (M.D. Tenn. Oct. 19,

2011); *Williams*, 2006 WL 273588, at *2. In those cases, however, the plaintiff argued in opposition to a motion to dismiss that he had intended to sue defendants in their individual capacities. Muse has not responded to Defendants' motion and so has not made any such clarification in this case.

For these reasons, the undersigned finds that Muse has not alleged claims against Harper and Heimbach in their individual capacities.

### iii. Futility of Amendment

Finally, Defendants further argue that any opportunity for Muse to amend his claims would be futile. *See Pedreira v. Ky. Baptist Homes for Children*, 579 F.3d 722, 729 (6th Cir. 2009) (citation omitted); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420–21 (6th Cir. 2000). Because Muse has not responded in opposition to Defendants' motion or requested leave to amend, the undersigned does not find that granting such leave sua sponte is appropriate in this matter. However, the undersigned briefly addresses Defendants' arguments.

To establish a prima facie case under § 1983, a plaintiff must allege: (1) the defendant acted under color of state law; and (2) this conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527. 535 (1981)). Muse's allegations are best construed as asserting a claim that he was unlawfully searched and seized in violation of the Fourth Amendment. Defendants argue, however, that Muse's Fourth Amendment rights were not violated because he had a lessened expectation of privacy arising from his status as a parolee. (Doc. No. 36, PageID# 104–06.)

The Fourth Amendment protects the right of citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy. *Kyllo v. United States*, 533 U.S. 27, 33–34 (2001). In determining whether a particular search is permissible

under the Fourth Amendment, "the touchstone . . . is reasonableness." *United States v. Lifshitz*, 369 F.3d 173, 178 (2d Cir. 2004). A vehicle stop by a police officer is a seizure for Fourth Amendment purposes that must be supported by "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place*, 462 U.S. 696, 702 (1983) (citing *Terry v. Ohio*, 392 U.S. 1, 88 (1968)); *Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) (citation omitted).

Defendants' primary argument is that, because Muse was a parolee at the time of the search, he had a diminished expectation of privacy and was subject to a search of his person or property at any time, with or without reasonable suspicion of a crime. (Doc. No. 36, PageID# 105.) Defendants are correct that, in *Samson v. California*, the Supreme Court found a warrantless search executed solely on the grounds of parole status to be permissible. 547 U.S. 843, 846 (2006). Examining the totality of the circumstances by balancing the intrusion upon Samson's privacy against the government's interests, the Court found that the suspicionless search was reasonable because all parolees in California have severely reduced expectations of privacy and the state, by contrast, had an "overwhelming interest" in supervising parolees in order to combat recidivism and promote reintegration and positive citizenship among parolees. *Id.* at 850–53 (citation omitted). Recognizing that California law prohibited "arbitrary, capricious or harassing" searches of parolees, the Court nonetheless concluded that the Fourth Amendment did not prohibit a police officer from conducting a suspicionless search of a parolee. *Id.* at 856.

*Samson*'s holding has important limitations, however. First, a "search condition validates a search only if the police had advance knowledge that the search condition applied before they conducted the search." *United States v. Caseres*, 533 F.3d 1064, 1075–76 (9th Cir. 2008) (citing *Samson*, 547 U.S. at 856 n.5 ("Under California precedent an officer would not act reasonably in

conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee.")); *United States v. Williams*, 702 F. Supp. 2d 1021, 1030 (N.D. Ill. 2010) ("[T]he courts that have addressed the issue have concluded that law enforcement officers cannot lawfully search a parolee's or probationer's person, property, or residence based solely on a probation or parole search condition of which they are unaware."); *New v. Perry*, No. 2:07-cv-723, 2009 WL 483341, at *9 (S.D. Ohio Feb. 25, 2009) (holding that search condition did not justify detention when officers were unaware of it). Second, as noted above, the *Samson* court did not find that parolee status allows officers to conduct "harassing" searches. *See* 547 U.S. at 856; *United States v. King*, 736 F.3d 805, 810 (9th Cir. 2013) (recognizing that the Fourth Amendment does not permit "searches that are conducted for illegitimate reasons, such as harassment"); *United States v. Lewis*, 672 F. Supp. 2d 827, 834 (S.D. Ohio 2009) ("This Court has previously ruled that it is not a federal constitutional violation for any peace officer to search a parolee, so long as the search is not merely to harass."); *United States v. Widener*, No. 3:08-CR-01, 2008 WL 4831344, at *3 (E.D. Tenn. Nov. 4, 2008) (recognizing protection of parolees "from arbitrary, capricious or harassing searches").

Defendants have filed Muse's parole certificate showing that he was on parole at the time of the search as an exhibit to their Motion and ask the Court to take judicial notice of it.[3] (Doc. No. 36-2.) But the fact that Muse was on parole at the time of the stop and search does not necessarily defeat his claims. The Fourth Amendment does not permit harassing searches of parolees; nor does it permit suspicionless searches conducted by officers who do not know at the time that the person is on parole. Muse does not allege that Heimback or Harper did not know he was on parole when they stopped and searched him. Defendants do not argue that they did.

---

[3] The Court may take judicial notice of Muse's Parole Certificate as a public record. *See* Tenn. Code Ann. § 40-28-205 (referring to parole certificate as a kind of court document); *Wyser-Pratte*, 413 F.3d at 560.

Regardless, however, because Muse has not opposed Defendants' motion to dismiss, moved for leave to amend to sue Defendants in their individual capacities, or otherwise prosecuted this action for more than six months, dismissal of these claims is appropriate.

### b. State Law Claims

Defendants argue that Muse has failed to state a claim of defamation under state law based on Harper's call to Butcher about Muse's alleged drug activity. (Doc. No. 36, PageID# 109.) This claim fails as a matter of law because Muse does not allege damages arising from Harper's allegedly false statement.

Under Tennessee law, "[d]amages from false or inaccurate statements can no[t] . . . be presumed; actual damage must be sustained and proven in all defamation cases." *Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006). General references to damages in a complaint will not suffice. *Id.* Here, as in *Kersey*, Muse's Complaint "refers in the most general terms to damages in the form of loss of reputation" and fails to allege specific harm stemming from Harper's statement. *Id.* The only references to damages are the following: "slander my name malicious lies" and "slander my name assassinate my character." (Doc. No. 1, PageID# 2–3.) Because this general language does not offer any "allegations of fact that could lead the court to attribute" any loss to Harper's statement, *Kersey*, 2006 WL 3952899, at *6, Muse fails to state a plausible claim of defamation.

Another ground supports dismissal: the untimeliness of Muse's claim. Although the statute of limitations is an affirmative defense that must normally be raised by a party in response to a pleading, *see* Fed. R. Civ. P. 8(c), this is an action in which Muse is proceeding *in forma pauperis*. The language of 28 U.S.C. § 1915(e)(2) provides that the Court "shall dismiss [a case] at any time" if the Court determines that a plaintiff proceeding *in forma pauperis* fails to state a claim upon

which relief may be granted. Accordingly, if a plaintiff's pleadings themselves show that his claims are time-barred, it is appropriate for the Court to *sua sponte* dismiss such claims. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Alston v. Tennessee Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) ("Because the statute of limitations defect was obvious from the face of the complaint, sua sponte dismissal of the complaint was appropriate."); *Fraley v. Ohio Gallia Cty.*, 166 F.3d 1213, 1998 WL 789385, at *1 (6th Cir. 1998) ("[A] sua sponte dismissal of an in forma pauperis complaint is appropriate where the complaint bears an affirmative defense such as the statute of limitations . . . .").

Slander claims under Tennessee law are subject to a six-month statute of limitations. Tenn. Code. Ann. § 28-3-103 (West 2016). Muse alleges that the incident in question occurred on June 29, 2014, and he filed his complaint on June 1, 2015. (Doc. No 1, PageID# 2.) His slander claim is therefore untimely and should be dismissed. The undersigned expresses no opinion regarding the merits of any other state-law claim.

## IV.    Recommendation

In light of the foregoing, the Magistrate Judge recommends that Defendants' Motion to Dismiss (Doc. No. 35) be GRANTED. Defendants' motion to ascertain status (Doc. No. 45) is FOUND MOOT.

Any party has fourteen (14) days after being served with this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days after being served with a copy thereof in which to file any responses to said objections.  Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further

appeal of the matters disposed of therein. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered this 4th day of August, 2017.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge